UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Dennis Russin,

      Plaintiff,

      v.                                              Civil Action No. 2:19-cv-105-cr-jmc

State of Vermont et al.,

      Defendants.

## **REPORT AND RECOMMENDATION**
(Doc. 17)

Plaintiff Dennis Russin, a federal pretrial detainee in the custody of the Vermont Department of Corrections (DOC), proceeding *pro se* and *in forma pauperis*, has commenced this action under 42 U.S.C. § 1983 against Defendants State of Vermont, Commissioner Michael Touchette, and DOC employees Greg Hale, Matt Brouillette, Corey Weikel, and Antonio Bond, in both their individual and official capacities. (Doc. 4.) Russin alleges that he sustained injuries during a transportation by DOC employees Weikel and Bond to federal court. (*Id.* at 3, ¶ 15.) More precisely, Russin asserts that the handcuffs employed as restraints by the correctional officers caused him severe injuries, alleging that every time he moved or shifted positions the handcuffs tightened to the point of causing pain and suffering. (*Id.* at 3–4, ¶¶ 16–20.) Presently before the Court is Defendants' Motion to Dismiss. (Doc. 17.)

For the reasons stated below, I recommend the Defendants' Motion to Dismiss (Doc. 17) be GRANTED.

## Factual and Procedural Background

On June 1, 2019, Russin filed his Complaint alleging that he sustained injuries during a transport on April 1, 2019 from the federal courthouse in Burlington, Vermont back to the Northwest State Correctional Facility (NWSCF) in Swanton, Vermont. (Doc. 4 at 3, ¶ 15.) He states that correctional officer Weikel applied the handcuffs to him before transport, tightening the cuffs until Russin told him that the cuffs were "to[o] tight" and reminded him "he still had to put the blackbox on."[1] (*Id*.) Russin claims that Weikel responded, "[Y]ou would[n't] have to worry about it if you did[n't] have baby hand[s]." (*Id*.) Russin claims that Weikel did not double lock the left side cuff to prevent it from inadvertently tightening further. (*Id*. ¶ 16.)

Shortly after the transport van left the courthouse, Russin states that he heard the left cuff click tighter and felt it pinching his wrist. (*Id*.) As he fidgeted to try to get comfortable, the cuffs continually tightened, causing him severe pain. (*Id*.) Russin avers that he and fellow inmates Ira Flowers, Matt Renolds, and Tyson Wells all yelled to correctional officers Weikel and Bond about the situation and asked them to stop the van to readjust Russin's handcuffs. (*Id*. ¶¶ 16–17.) Russin alleges that Weikel and Bond laughed and replied that "pulling over was not going to happen." (*Id*. ¶ 18.) Inmate Tyson Wells tried to help relieve Russin's pain by

---

[1] "The black box fits over the handcuffs and covers the keyholes to prevent [an] inmate from picking the locks. It forms a rigid link between the inmate's wrists." *Shehan v. Erfe*, CASE NO. 3:15-cv-1315 (MPS), 2017 WL 53691, at *3 (D. Conn. Jan. 4, 2017).

occasionally pulling his sleeve up. (*Id.*; Doc. 4-3 at 2.)  Nevertheless, Russin alleges

that his fingers were "excessively numb and tingling," his left wrist felt a "sharp

p[]inching pain," and his fingernails turned black due to the tight handcuffs.  (Doc. 4

at 4, ¶ 20.)

Once the transport van had returned to NWSCF, Russin states that Bond

apologized to him and explained that it is DOC policy not to stop a transport once it

is underway.  (*Id.* ¶ 24.)  Russin alleges that he then filed an emergency medical

grievance regarding his injuries.  (*Id.* ¶ 25.)  He states that he was awakened at

2:30 a.m. for medical care, but that he declined treatment at that time and was

instead seen around 9:00 a.m.  (*Id.* ¶ 26.)  Russin states that he filed subsequent

grievances about his injuries and the DOC's transport policies—specifically, the use

of blackbox restraints, the type of transport vans, which do not allow the officers

access to the inmate area during transit, and the policy that transport vans should

not stop mid-transport.  (*Id.* ¶ 28; *see also id.* at 5–6, ¶¶ 36–40.)  Russin alleges that

both Matt Brouillette and Greg Hale reviewed and denied his complaints, stating

that the medical responders found there was no injury and that the policies objected

to would remain in force as they ensured security.  (*Id.* at 4, ¶¶ 29–31.)  Russin

claims that his wrist remained bruised for approximately four weeks after the

incident (Doc. 4-1 at 4) and still "hurts very bad" (Doc. 4. at 5, ¶ 38).

Russin's Complaint sets forth civil claims under the Racketeer Influenced and

Corrupt Organizations Act (RICO), constitutional violations under what he refers to

as the "Bivens Act," and negligence.  (*Id.* at 6–7, ¶¶ 41–49.)  As a result of the alleged

injuries, Russin seeks compensatory and punitive damages, as well as equitable relief

3

in the form of an order compelling the DOC to abandon use of the blackbox restraint and a revision of other DOC transport policies. (*Id.* at 7.)

On September 20, 2019, Defendants filed the instant Motion to Dismiss. (Doc. 17.) They argue that Russin has failed to state a civil RICO or a *Bivens* claim. (*Id.* at 2–4.) They further argue that, although he did not invoke 42 U.S.C. § 1983 in his Complaint, Russin has failed to state a claim under § 1983 because: (1) state actors in their official capacities are not "persons" under § 1983; (2) Russin has not pleaded sufficient facts showing personal involvement by Defendants Touchette, Hale, and Brouillette; and (3) Russin has failed to allege sufficient facts that the injury was objectively grave enough or that Defendants acted with the requisite level of culpability to state a claim of excessive force under the Eighth Amendment. (*Id.* at 4–8.) Finally, Defendants contend that this Court lacks jurisdiction because Russin's claims against Defendants in their official capacities are barred by the Eleventh Amendment and because Russin lacks standing to pursue injunctive relief. (*Id.* at 8–11.)

## Analysis

### I.    Legal Standards

In evaluating whether to dismiss a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court tests the pleading for "facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678. This does not require a plaintiff to provide "detailed factual allegations" to support his claims, *Twombly*, 550 U.S. at 555, but allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555, 557 (a pleading that offers "labels and conclusion" or "naked assertion[s]" devoid of "further factual enhancement" does not satisfy Rule 8).

In assessing the adequacy of the pleadings, a court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016). A complaint is properly dismissed where, as a matter of law, "the allegations in [it], however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Because Russin is representing himself, in addition to accepting his factual allegations as true, the Court is also required to read his Complaint liberally and construe it to raise the strongest possible argument. *Harris v. Miller*, 818 F.3d 49, 56–57 (2d Cir. 2016) (per curiam).

On the other hand, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject-matter

5

jurisdiction, the Court must accept as true all factual allegations contained in the complaint. *See id.; Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). The plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 561 U.S. 247 (2010).

## II.    Racketeer Influenced and Corrupt Organizations Act (RICO) Claim

Russin asserts a claim under RICO, alleging that Defendants "have conducted the [D]epartment of [C]orrections as part of the [S]tate of [V]ermont through a pattern of racketeering activity." (Doc. 4 at 6, ¶ 43.) However, Russin has not alleged any injury to his business or property, only injury to his wrist. This is insufficient to state a civil RICO claim. *See Bascuñán v. Elsaca*, 874 F.3d 806, 817 (2d Cir. 2017) ("A plaintiff bringing a civil RICO claim [under 18 U.S.C. § 1964(c)] must allege an injury to his 'business or property'; he cannot, for example, recover for 'personal injuries.'" (footnote omitted) (citing *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2108 (2016))).

Second, a "civil RICO plaintiff must allege the defendant's '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *United States v. Indelicato*, 865 F.2d 1370, 1376 (2d Cir. 1989) (footnote omitted) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). A "pattern of racketeering activity" must involve at least two predicate acts of racketeering. 18 U.S.C. § 1961(5); *see Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013). Russin's allegation of a single instance of a correctional officer failing to double lock a handcuff is insufficient to establish a pattern. *See Ali v. Timmons*,

6

No. 04-CV-0164E, 2004 WL 1698445, at *3 (W.D.N.Y. July 26, 2004) (dismissing civil RICO claim where plaintiff alleged only one instance of theft or conversion of rent money). Moreover, conclusory allegations of RICO violations are insufficient to state a claim. *Razzoli v. Fed. Bureau of Prisons*, No. 12 Civ. 3774(LAP)(KNF), 2014 WL 2440771, at *8 (S.D.N.Y. May 30, 2014) (dismissing RICO claims because "[n]o factual allegations exist [in the Petition] about . . . specific racketeering activities") (quoting *Razzoli v. Fed. Bureau of Prisons*, No. 12 Civ. 3774(LAP)(KNF), 2013 WL 8541468, at *7 (S.D.N.Y. July 10, 2013), and citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Russin summarily alleges, without supporting facts, that Defendants have engaged in racketeering activity as defined in 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), and § 1344 (bank fraud). Such bare assertions cannot suffice to defeat a motion to dismiss.

Finally, RICO actions against government employees in their official capacities cannot be maintained. *See Naples v. Stefanelli*, 972 F. Supp. 2d 373, 389 (E.D.N.Y. 2013) (agreeing that government entities cannot be held liable under RICO as a matter of law, therefore neither may government employees in their official capacities). As such, I recommend that Russin's RICO claims be dismissed.

## III.  *Bivens* Claim

Russin also brings a claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), which only authorizes suit for money damages against federal officials in their individual capacity. *See Farmer v. Fed. Bureau of Prisons*, No. 13-CV-1255 (DLI)(CLP), 2015 WL 1439871, at *4 (E.D.N.Y. Mar. 27, 2015) (requiring allegations against a federal agent for *Bivens* claim).

Russin, however, has sued only *state* officials in this action.  Therefore, *Bivens* is not an appropriate cause of action in this case and I recommend that such claims be dismissed.

## IV.    Section 1983 Claim

Although Russin's Complaint does not state a cause of action under 42 U.S.C. § 1983, the Court is required to read his *pro se* Complaint liberally and construe it to raise the strongest possible argument.  *Harris*, 818 F.3d at 56–57.  Because "a *Bivens* action is the federal analog to suits brought against state officials [under § 1983]," *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006), I construe Russin's *Bivens* claims as § 1983 claims.

Under § 1983, a plaintiff may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983).  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id*.  The U.S. Supreme Court has identified two elements of a § 1983 claim: "a plaintiff [(1)] must allege the violation of a right secured by the Constitution and laws of the United States, and [(2)] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 does not itself create or establish a federally protected right; instead, it creates a cause of action to enforce federal rights created elsewhere, such

as a federal constitutional right. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Although Russin does not cite to a specific constitutional provision that Defendants

violated, because Russin is an inmate, this Court construes Russin's claim as alleging

that Defendants used excessive force in violation of the Eighth Amendment. *See*

*Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).

### A.    Claim for Injunctive Relief

Russin seeks both preliminary and permanent injunctive relief against

Defendants' use of so-called blackbox restraints during prisoner transport and the

type of transport van currently employed that allegedly does not allow a guard access

to where the inmates are seated in case of an emergency. (Doc. 4 at 7.) Russin

further seeks an order directing Defendants to update policies that he claims are

"outdated," namely the policy that a transport will not stop to readjust hardware

once the journey has begun. (*Id.*)

Although actions for damages against officials in their official capacities must

be dismissed, *see Part IV.B infra*, a claim for injunctive relief to prevent a continuing

violation of federal law may nevertheless survive. *See Green v. Mansour*, 474 U.S.

64, 68 (1985) (citing *Ex parte Young*, 209 U.S. 123, 155–56, 159 (1908)). Here,

however, Russin has not alleged that there is a continuing violation occurring.

Indeed, Defendants argue that this failure deprives Russin of Article III

standing to pursue injunctive relief. (Doc. 17 at 10–11.) "[S]tanding is a federal

jurisdictional question determining the power of the court to entertain the suit."

*Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (internal quotation marks

omitted). "To satisfy this jurisdictional requirement, (1) the plaintiff must have

suffered an injury-in-fact; (2) there must be a causal connection between the injury

and the conduct at issue; and (3) the injury must be likely to be redressed by a

favorable decision." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)

(internal quotation marks omitted); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560–61 (1992).  To meet the constitutional minimum of standing to seek injunctive

relief, Russin must show that "he has sustained or is immediately in danger of

sustaining some direct injury as the result of the challenged official conduct." *City of

Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks omitted).

This requires a showing of "both [1] a likelihood of future harm and [2] the existence

of an official policy or its equivalent." *An v. City of New York*, 16 Civ. 5381 (LGS),

2017 WL 2376576, at *2 (S.D.N.Y. June 1, 2017) (alterations in original) (quoting

*Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004)).

Russin's Complaint fails to establish standing on the first prong.  A future

harm is sufficiently likely if "[t]he injury or threat of injury" is "both real and

immediate, not conjectural or hypothetical."  *Shain*, 356 F.3d at 215 (alternation in

original) (internal quotation marks omitted).  "[P]ast exposure to illegal conduct does

not in itself show a present case or controversy regarding injunctive relief. . . ."

*Lyons*, 461 U.S. at 102 (second alteration in original) (internal quotation marks

omitted).  A plaintiff must show "a sufficient likelihood that he [or she] will again be

wronged in a similar way." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir.

2012) (alteration in original) (quoting *Lyons*, 461 U.S. at 111).  Here, Russin's claim

is that the COs applied his handcuffs too tightly, failed to double lock his handcuffs,

and ignored his complaints and requests to loosen the handcuffs on April 1, 2019

when transporting him from the court back to the correctional facility. He has made no allegation that the COs have since repeated these actions or that they will overly tighten or fail to double lock his handcuffs in the future. As such, any threat of future injury is speculative, and mere reference back to the isolated April 1 incident is insufficient to establish standing to seek injunctive relief regarding transport policies.

Moreover, even if the Court assumes that Russin has established standing, he has failed to plead sufficient facts to maintain a claim for injunctive relief. In order for the court to grant injunctive relief, Russin must show that he is likely to suffer irreparable injury. *See Lyons*, 461 U.S. at 111 (citing *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). "[S]peculative harm is insufficient to establish irreparable harm." *Brown v. Lape*, No. 9:08–CV–1154 (LEK/DRH), 2009 WL 235838, at *1 (N.D.N.Y. Jan. 30, 2009) (citing *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995)); *see also Lyons*, 461 U.S. at 111. Again, Russin has failed to allege any concrete facts that such tight handcuffing or failure to double lock handcuffs will occur again in the future, and any claim that the incident will be repeated, without more, is pure speculation and therefore insufficient to establish irreparable harm. Absent a showing of interference with constitutional rights and irreparable harm, a court should not interfere with established, internal prison procedures. *See Bain v. Wehry*, No. 1:06–CV–222, 2008 WL 2705066, at *2 (D. Vt. July 9, 2008) (citing *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992)); *see also Henderson v. Jones*, Case No. 3:15cv480/RV/EMT, 2016 WL 316245, at *2 (N.D. Fla. Jan. 11, 2016) (collecting cases).

B.    **Official-Capacity Claims for Damages**

Fundamentally, in order to sustain a claim for relief under § 1983, a plaintiff must "identify the individuals or distinct legal entity alleged to have acted under color of state law." *Wilson v. S. Health Partners Nursing Staff*, 1:18-cv-00013-FDW, 2018 WL 1972716, at *2 (W.D.N.C. Apr. 26, 2018); *Mallgren v. Burkholder*, 52 F. Supp. 3d 490, 495 (E.D.N.Y. 2014) ("Section 1983 claims generally must be brought against the individuals personally responsible for the alleged deprivation of constitutional rights.").

Defendants argue that Russin's claims against the State of Vermont as well as the individual defendants in their official capacities are barred by Vermont's sovereign immunity under the Eleventh Amendment to the United States Constitution.  (Doc. 17 at 8–10.)  The Eleventh Amendment[2] protects a state from suits in federal courts unless there has been an explicit and unequivocal waiver of immunity by a state or a similarly clear abrogation of immunity by Congress.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).  Agencies and departments of a state are entitled to assert the state's Eleventh Amendment immunity.  *Pennhurst*, 465 U.S. at 100; *see also Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (noting Eleventh Amendment immunity extends to "state agents and state instrumentalities that are, effectively, arms of a state") (internal quotation marks

---

[2] Although the Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has also been interpreted to bar federal suits against state governments by a state's own citizens.  *See Hans v. Louisiana*, 134 U.S. 1, 15 (1890).

omitted).  This protection also extends to suits for money damages against state officials in their official capacity.  *Brandon v. Holt*, 469 U.S. 464, 471 (1985).

The State of Vermont has not waived its Eleventh Amendment sovereign immunity.  In fact, the Vermont Legislature has specifically preserved the State's immunity under that Amendment.  *See* 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserved Eleventh Amendment immunity for all claims not specifically waived).  It is also well settled that Congress did not abrogate state sovereign immunity by enacting § 1983.  *See Quern v. Jordan*, 440 U.S. 332, 340–42 (1979).  Consequently, Russin's claims against the State of Vermont as well as his claims against Defendants in their official capacities are barred.

Moreover, § 1983 allows suit against "persons."  Defendants argue that neither the State of Vermont nor the individual state officials in their official capacities are "persons" for purposes of the statute.  I agree.  "'Neither a state nor one of its agencies . . . is a 'person' under § 1983.'"  *Thompson v. Pallito*, 949 F. Supp. 2d 558, 572 (D. Vt. 2013) (quoting *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998)).  State officers sued in their official capacity are also not "persons" subject to suit under § 1983.  *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against that official but rather is a suit against the official's office."); *Hafer v. Melo*, 502 U.S. 21, 27 (1991).  Accordingly, neither the State of Vermont nor Defendants in their official capacities are "persons" under § 1983 and Russin's claims against them must be dismissed.

### C.    Individual-Capacity Claims for Damages

#### 1.    Personal Involvement

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone v. N.Y. State Dep't Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (internal quotation marks omitted); *see also Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Thus, supervisory officials may not be held liable merely because they hold positions of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Supervisory personnel may be considered personally involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Defendants argue that Russin has failed to allege any personal involvement by Touchette, Hale, or Brouillette, and that the supervisory claims against them should be dismissed. (Doc. 17 at 5–7.) Neither Touchette, Hale, nor Brouillette had any direct involvement in Russin's purportedly tight handcuffing, failure to double lock,

or the correctional officers' refusal to stop the transport van once in transit.  (*See generally* Doc. 4.)

The Complaint does not allege any facts from which the Court can infer Defendant Touchette's personal involvement in the alleged violations.  In fact, the Complaint does not set forth any allegations concerning Touchette except that he is lying about the safety of the "hardware being used" during transport.  (*Id.* at 5, ¶ 35.) This allegation is not only conclusory, *see Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 365 (S.D.N.Y. 2013) ("The Complaint's conclusory statements are insufficient to demonstrate the personal involvement of any of the supervisory defendants named in this case."), but also relates solely to Russin's challenge of DOC's policy regarding transport vans—a challenge Russin lacks standing to bring and therefore this Court lacks jurisdiction to entertain.  (*See supra Section IV. A.*) Finally, the Court cannot infer liability based on Touchette's position as the Commissioner of the Vermont DOC.  *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam) ("[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam))).  Accordingly, Russin's claims for damages against Defendant Touchette in his individual capacity should be dismissed for lack of personal involvement.

The primary allegations against Hale and Brouillette are that they investigated and denied Russin's complaints about the incident, including his claims of wrist injury on April 1, 2019 and his grievance surrounding transport policies.

(Doc. 4 at 4, ¶¶ 29–31.)  In so doing, it appears that Russin relies principally on the second and fifth *Colon* categories to establish personal involvement: failure to remedy the wrong after he purportedly informed them of the April 1 incident, and deliberate indifference to his constitutional rights by failing to act on information about his alleged injury.  (*Id.*)  While "the receipt of letters or grievances, by itself, does not amount to personal involvement," *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010), "[p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint."  *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002).  As a general matter, defendants must become aware of the alleged unconstitutional acts while they are ongoing and capable of being remedied.  *See Jordan v. Fischer*, 773 F. Supp. 2d 255, 278 (N.D.N.Y. 2011); *Colon*, 58 F.3d at 873. Although Russin alleges that Hale and Brouillette investigated and denied his grievance regarding the April 1 incident, he alleges that they learned of the incident after it had concluded.  Thus, Russin has not sufficiently alleged personal involvement with respect to Hale and Brouillette and the Eighth Amendment claims against them should be dismissed.

### 2.    Failure to State a Claim Under the Eighth Amendment

The Eighth Amendment protects prison inmates from cruel and unusual punishment including any "unnecessary and wanton infliction of pain."  *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Although the ordinary use of handcuffs is part of the "routine discomfort [that] is 'part of the penalty that criminal offenders pay for their offenses against society,'"

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)), the use of excessively tight handcuffs may constitute a violation of the Eighth Amendment. *See Davidson v. Flynn*, 32 F.3d 27, 30–31 (2d Cir. 1994).

To state such a claim, a plaintiff's allegations must satisfy both an objective and a subjective test. *Id.* at 29. "The objective component relates to the seriousness of the injury; however, 'the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.'" *Id.* (quoting *Hudson*, 503 U.S. at 4) (alteration in original). As the United States Supreme Court clarified, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). Thus, while the seriousness of the injury is certainly "relevant to the Eighth Amendment inquiry," *Hudson*, 503 U.S. at 7, the objective component of an excessive force inquiry more aptly focuses on the nature and level of force used against the inmate. *See Wilkins*, 559 U.S. at 39; *Shehan v. Erfe*, CASE NO. 3:15-cv-1315 (MPS), 2017 WL 53691, at *8 (D. Conn. Jan. 4, 2017); *Pewitte v. Haycraft*, No. 3–13–0484, 2015 WL 5038026, at *5 (M.D. Tenn. Aug. 25, 2015).

The subjective prong requires that the accused prison official "have acted with a sufficiently culpable state of mind." *Warren v. Purcell*, No. 03 Civ. 8736(GEL), 2004 WL 1970642, at *6 (S.D.N.Y. Sept. 3, 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. However, "not . . . every malevolent touch by a

prison guard gives rise to a federal cause of action." *Id.* at 9. Accordingly, a *de minimis* use of force does not typically warrant "constitutional recognition." *Id.* at 9–10; *see also Branham v. Meachum*, 77 F.3d 626, 630 (2d Cir. 1996).

Here, Russin claims that correctional officer Weikel used excessive force by fastening his handcuffs too tightly and failing to double lock the cuffs. (Doc. 4 at 3, ¶¶ 15–16.) He alleges that the cuffs then continued to tighten during transport from the federal courthouse in Burlington, Vermont back to NWSCF and that, despite complaints from Russin and the inmates seated beside him, Weikel and Bond refused to stop the van to adjust his cuffs. (*Id.* ¶¶ 16–18.)

The incidents Russin describes in his Complaint do not give rise to an Eighth Amendment violation. As to the objective component, it is unclear whether the use of force applied would be considered sufficiently serious. First, Russin does not allege that he experienced or communicated anything more than routine discomfort when Weikel first placed the handcuffs on him. *See Ireland v. Solano Cty. Sheriff*, No. 2:08–CV–2102–RCF, 2009 WL 3055217, at *1 (E.D. Cal. Sept. 16, 2009). He states only that he told Weikel the cuffs were "tight enough" and that the blackbox still needed to be put on. (Doc. 4 at 1, ¶ 1; Doc. 4-1 at 2.) Second, Russin alleges that once the transport van had left the courthouse, the cuffs tightened as a result of Weikel's failure to double lock the cuffs. (Doc. 4 at 3, ¶ 16.) Because Weikel and Bond refused to stop the transport van once in transit, he states that his fingernails turned black, he experienced numbness and pain in his hand, and that his wrist was bruised for nearly a month following the incident. (*Id.* at 4, ¶ 20; Doc. 4-1 at 4.) Though "[t]here is consensus among courts in this circuit that tight handcuffing does not constitute

excessive force unless is causes some injury beyond temporary discomfort," *Shehan*, 2017 WL 53691, at *10 (internal quotation marks omitted), Russin does in fact allege that his bruises remained for nearly a month and that his "wrist is still injured and some days hurts very bad." (Doc. 4 at 5, ¶ 38.) At this stage, Russin's statements could possibly suffice to state a plausible allegation that the level of force applied was more than *de minimis* in satisfaction of the objective component of the excessive force standard. *See Phillips v. Riggs*, Case No. 18–cv–0472–MJR, 2018 WL 1738013, at *2 (S.D. Ill. Apr. 11, 2018). However, the Court need not resolve this question because the Complaint does not satisfy the subjective requirement

Although the cuffs may have been tight and caused Russin some degree of pain, he makes no allegation that Weikel deliberately placed the handcuffs on too tightly or failed to double-lock the cuffs for the purpose of causing harm. *See May v. Maples*, No. 1:13CV00113 JM, 2014 WL 6769897, at *3 (E.D. Ark. Dec. 1, 2014). Russin alleges that Weikel specifically stated that he was continuing to tighten because Russin had "baby hand[s]." (Doc. 4 at 3, ¶ 15.) Though Weikel's statement may evince a lack of sympathy, it does not on its face show an intent to harm; rather, it demonstrates his belief that the handcuffs needed to be tightened to accommodate Russin's apparently smaller wrists. *See Ireland*, 2009 WL 3055217, at *1. The Complaint itself therefore suggests a legitimate penological justification for Weikel's application of the handcuffs. Russin also does not allege any facts suggesting that Weikel's failure to double-lock the cuffs was anything but a mistake. Thus, there is no indication that the tightening of the cuffs while in transit was intentional. *See Warren*, 2004 WL 1970642, at *8.

19

Furthermore, Russin does not aver that Weikel and Bond refused to stop the transit van maliciously or sadistically for the purpose of causing harm. Russin states that when he and the other inmates asked Weikel and Bond to stop the van to readjust his restraints, they laughed and responded that "pulling over was not going to happen." (Doc. 4 at 3, ¶ 18.) Russin admits that Bond apologized about the situation upon arrival at the prison and advised that "it's a policy and once in transport [h]e can['t] stop." (*Id.* at 4, ¶ 24.) Again, Defendants' statements do not show an intent to harm, but simply their adherence to a DOC policy with a legitimate penological justification. *See Warren*, 2004 WL 1970642, at *8. While Bond and Weikel's alleged laughter may appear callous, that alone is not a sufficient basis for a claim of malice or sadism. In the absence of any factual allegation of improper or wanton intent, the Complaint fails to state an Eighth Amendment excessive force claim. Accordingly, I recommend that Russin's claims against Defendants Bond and Weikel in their individual capacities be dismissed

## Conclusion

For the foregoing reasons, I recommend that Defendants' Motion to Dismiss (Doc. 17) be GRANTED in its entirety, and the claims alleged in Russin's Complaint (Doc. 4) be DISMISSED.

Dated at Burlington, in the District of Vermont, this 6th day of January 2020.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

20

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision.*" Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).